# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MICHAEL CUMMINGS** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**NATIONAL CREDIT CARE CORPORATION,** a Colorado corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Cummings ("Cummings" or "Plaintiff Cummings") brings this Class Action Complaint and Demand for Jury Trial against Defendant National Credit Care Corporation ("NCC" or "Defendant") to stop NCC from violating the Telephone Consumer Protection Act ("TCPA") by placing autodialed phone calls to consumers without consent, including unsolicited phone calls to phone numbers registered on the National Do Not Call registry ("DNC") and to otherwise obtain injunctive and monetary relief for all persons injured by NCC's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. NCC provides credit repair and restoration services.

2. In order to generate new business, NCC relies on telemarketing.

3. NCC hired a call center in the Philippines named ConnectSend to make its calls on their behalf.

4. Once a lead has been qualified by ConnectSend, the lead is then transferred to NCC.

5. NCC benefits directly from every lead that it receives through ConnectSend. It is also believed that NCC pays for each qualified lead it receives from ConnectSend.

6. NCC is responsible for the calls made by ConnectSend:

   i) ConnectSend places calls to consumers using an autodialer;

   ii) ConnectSend places calls to consumers regardless of whether it has obtained the required express prior written consent to place autodialed calls;

   iii) ConnectSend places unsolicited calls to consumers, regardless of whether those consumers have their phone number(s) registered on the DNC; and

   iv) ConnectSend continues to place unsolicited calls, despite requests from consumers for the calls to stop.

7. In Plaintiff Cummings's case, ConnectSend placed at least 7 autodialed calls to Plaintiff Cummings's cellular phone number without his

consent, despite his number being registered on the DNC, and despite requests for the calls to stop. The calls were made directly on behalf of NCC.

8. In response to these autodialed calls, Plaintiff Cummings is filing this lawsuit seeking injunctive relief for Defendant to cease from violating the TCPA by placing autodialed calls to consumers' cellular telephone numbers, including phone numbers that are registered on the DNC, as well as an award of statutory damages to the members of the Class and costs.

## PARTIES

9. Plaintiff Cummings is a Shelby Township, Michigan resident.

10. Defendant NCC is a Colorado corporation headquartered in Westminster, Colorado. Defendant conducts business nationwide including in this District.

## JURISDICTION AND VENUE

11. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

12. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because the wrongful conduct giving rise to this case was directed to this District.

# COMMON ALLEGATIONS

**ConnectSend, On Behalf of NCC, Places Unsolicited, Autodialed Calls to Consumers, Regardless of Whether the Consumers' Phone Numbers Are Registered On the DNC**

13. NCC hired ConnectSend to place calls on its behalf to generate leads for NCC's business.

14. The Federal Communication Commission has provided instruction stating that sellers such as NCC many not avoid liability by having their telemarketing outsourced:

> "[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activies to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

In re Joint Petition Filed by DISH Network, LLC et al. for Declatory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

15. The calls made by ConnectSend to consumers were made without their prior express consent of the consumers.

16. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all

4

autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

17. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing autodialed calls to cellular telephone numbers.

18. When a lead is qualified by ConnectSend, the lead is then transferred to NCC.

19. In addition, NCC provides ConnectSend with phone numbers in order to have its leads qualified prior to speaking with the consumers.

20. NCC knows or should know that ConnectSend is violating the TCPA for the benefit of NCC by placing calls to consumers using autodialed calls without having the required express prior written consent and calling phone numbers registered on the DNC.

21. NCC should have done sufficient research to ensure ConnectSend runs a TCPA compliant call center.

22. A cursory look online by NCC would have revealed significant problems with the way ConnectSend is placing unsolicited calls to consumers.

23. There is a plethora of complaints posted online about calls that are being made by ConnectSend:

- "just received a call from ConnectSend about helping me obtain a mortgage and wanted personal information...They said I filled out a form on line. problem is I NEVER DID NOR HAVE EVER HEARD OF THIS COMPANY!"

- "Told several times they have the wrong number or [we're] not interested."[1]

- "Unsolicited call"[2]

- "Called my number 20+ times in 2 days… left no message""[3]

- "Automated caller. Connect send you visited one our websites and filled out some information….I hung up. Solicitor."[4]

- "This number calls me 2-3 times and a day and do not leave a message. I finally answered the call. They are calling from the Philippines on behalf of connect Send Mortgage."[5]

- "Unknown Caller direct to my cell. No Message. Blocked!"[6]

- "… I told him she no longer has this # & to stop calling."[7]

- "This is a valid # for 'Connect Send', some Mortgage scam."[8]

- "won't stop"[9]

- "nuisance call"[10]

---

[1] https://www.shouldianswer.com/phone-number/8888613056
[2] *Id.*
[3] https://800notes.com/Phone.aspx/1-469-771-2125
[4] https://800notes.com/Phone.aspx/1-469-771-2125
[5] https://800notes.com/Phone.aspx/1-888-208-4703
[6] https://800notes.com/Phone.aspx/1-844-211-8390
[7] *Id.*
[8] *Id.*
[9] https://www.shouldianswer.com/phone-number/8882084703
[10] *Id.*

6

# PLAINTIFF CUMMINGS'S ALLEGATIONS

**NCC or its Agents Called Plaintiff Cummings's Cell Phone Number Without Consent Using an Autodialer, Despite Cummings Having His Number Registered On the DNC**

24. Plaintiff Cummings registered his cell phone number on the DNC on June 7, 2007 in order to avoid receiving unwanted solicitation calls. Plaintiff's cell phone number is for personal use.

25. Beginning in early-December, 2018, Plaintiff began to receive autodialed calls on behalf of NCC using phone number 810-544-4066 on his cellular phone number.

26. Shortly after the calls began, Plaintiff answered a call from 810-544-4066 on his cellular phone. He heard a noticeable pause before a live agent came on the line, indicative of the use of an autodialer. When Plaintiff spoke to the live agent, Plaintiff was told the company name was ConnectSend. Plaintiff told the agent that he was not interested and did not want any more calls.

27. Despite telling the agent that he did not want to receive any more calls, ConnectSend continued to place autodialed calls to Plaintiff's cellular phone using phone number 810-544-4066.

28. On December 13, 2018, Plaintiff received a voicemail on his cellular phone from Defendant using phone number 810-544-4066. The message begins with a click and is followed by background noises of a seemingly busy call center.

29. On December 28, 2018, Plaintiff received a voicemail on his cellular phone from Defendant using phone number 810-544-4066. Again, the message begins with a click, followed by background noises from the call center.

30. On January 10, 2019, Plaintiff received a voicemail on his cellular phone from Defendant using phone number 810-544-4066. The message begins with a click, followed by 5 seconds of silence, which indicates the use of an autodialer.

31. On January 17, 2019, Plaintiff received a voicemail on his cellular phone from Defendant using phone number 810-544-4066. The message is 2 seconds long, consisting of background noise.

32. On January 21, 2019, Plaintiff received a voicemail on his cellular phone from Defendant using phone number 810-544-4066. The message consists of 25 seconds worth of background noise.

33. On January 25, 2019, Plaintiff received a voicemail on his cellular phone from Defendant using phone number 810-544-4066. The message consists of 22 seconds worth of mostly background noise.

34. Upon an investigation conducted by Plaintiff's attorney, when calling the phone number 810-544-4066, the agent identifies the company as ConnectSend.

35. Plaintiff Cummings does not have a relationship with NCC or any of its agents, nor has he ever requested that NCC call him or consent to any contact from Defendant.

36. Simply put, NCC did not obtain Plaintiff Cummings's prior express written consent to call his cellular telephone using an autodialer.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims**

37. Plaintiff Cummings brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using the same equipment used to call Plaintiff, (4) for the same reason Plaintiff was called, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant did not obtain prior express written consent.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on the person's residential line, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the same reason Plaintiff was called, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant did not obtain prior express written consent.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called more than one time on the person's residential line, (2) within any 12-month period, (3) for the same reason Plaintiff was called.

38. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

39. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant or its agents placed autodialed phone calls to Plaintiff and the members of the Classes without first obtaining prior express written consent to place the calls;

(b) whether Defendant or its agents placed autodialed phone calls to Plaintiff Cummings and members of the Classes despite the fact that Defendant was placing autodialed calls to phone numbers registered on the DNC;

(c) whether Defendant or its agents continued to place autodialed phone calls to Plaintiff Cummings and members of the Classes despite opt-out requests made by Plaintiff and members of the Classes;

(d) whether Defendant's conduct constitutes a violation of the TCPA; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

42. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of

the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

43. Plaintiff repeats and realleges paragraphs 1 through 42 of this Complaint and incorporates them by reference.

44. Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

45. Defendant's acts were negligent, willful, or knowing.

12

46. These solicitation telephone calls were made *en masse* without the consent of Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation telephone calls.

47. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to between $500 and $1,500 per violative call.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

48. Plaintiff Cummings repeats and realleges the paragraphs 1 through 42 of this Complaint and incorporates them by reference.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[11]

---

[11] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

51. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

52. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Cummings and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

53. Defendant's acts were negligent, willful, or knowing.

54. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cummings and the Do Not Call Registry Class received more than one phone call in a 12-month period by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Cummings and the Do Not Call Registry Class are each entitled to between $500 and $1,500 per violative call.

# THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

55. Plaintiff Cummings repeats and realleges the paragraphs 1 through 42 of this Complaint and incorporates them by reference.

56. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the

15

do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

57. 47 C.F.R. § 64.1200(e), provides that § 64.1200(d) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[12]

58. Defendant, or an agent on behalf of Defendant, made marketing calls to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the

---

[12] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

16

entity and/or by implementing procedures that do not meet the minimum requirements to allow for the initiation of telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

59. Defendant's acts were negligent, willful, or knowing.

60. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

61. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal DNC Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Class as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**MICHAEL CUMMINGS**, individually, and on behalf of those similarly situated individuals

Dated: June 18, 2019

/s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946
*Counsel for Plaintiff and the putative Classes*

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
*Counsel for Plaintiff and the putative Classes*

George T. Blackmore (P76942)
BLACKMORE LAW PC
21411 Civic Center Drive, Suite 200
Southfield, MI 48076
Telephone: (248) 845-8594
Facsimile: (855) 744-4419
E-Mail:george@blackmorelawplc.com
*Local Counsel for Plaintiff and the putative Classes*